**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|   |   |
|---|---|
| Joaquin Fontes; Arturo Ruiz,<br><br>                   Plaintiffs,<br><br>vs.<br><br>Drywood Plus, Inc., an Arizona corporation doing business as Berry Bros. Firewood Co.; John Berry,<br><br>                   Defendants. | No. CV-13-1901-PHX-LOA<br><br>**ORDER** |

This Fair Labor Standards Act ("FLSA") action arises on the parties' second motion to approve a settlement, filed on November 25, 2013. On November 22, 2013, the undersigned Magistrate Judge conducted a fairness hearing in open court, which was attended by the parties' counsel, Plaintiffs Joaquin Fontes ("Fontes") and Arturo Ruiz ("Ruiz"), and a privately-retained Spanish-speaking interpreter to assist the Plaintiffs.

Having considered the parties' Joint Motion to Approve Settlement and Dismiss All Claims with Prejudice and attached Settlement Agreement and General Release ("Settlement Agreement"), docs. 17, 17-1; the relevant legal authorities; each Plaintiff's opinion that the settlement is fair, and relying on this Magistrate Judge's considerable experience as a former trial lawyer, state and federal judge, this Court finds the settlement is a fair and reasonable resolution of *bona fide* disputes over overtime wages allegedly owed and unlawful retaliation. Accordingly, the Court will approve the Settlement Agreement, retain jurisdiction to enforce the settlement's terms, and direct the Clerk of Court to enter the Stipulated Judgement and terminate this action.

**I. Background**

On September 15, 2013, Plaintiffs commenced this action, seeking unpaid compensation and other relief pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the Arizona Wage Act ("AWA"), Arizona Revised Statutes ("A.R.S.") § 23-350, *et seq.* (Doc. 1) Plaintiffs further allege they were unlawfully terminated at different times in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), and the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501, when they complained about Defendants' failure to pay them the overtime rate when they worked more than 40 hours per week. Plaintiffs seek declaratory relief, backpay for nonpayment and underpayment of wages, liquidated damages, attorney's fees and costs, and other relief available under the FLSA, AWA, AEPA, and any other applicable law. (*Id.* at 2)

The Complaint alleges Ruiz and Fontes were employed by Defendants for nearly 23 and 14 years, respectively, at the time their employments were terminated in March and February 2013. (*Id.* at 3)  As laborers preparing wood products for sale, Ruiz and Fontes were earning $14.00 per hour $12.50 per hour, respectively, when their jobs were involuntarily terminated. (*Id.*) In February 2013, Ruiz and Fontes allege they met with Defendant John Barry ("Barry"), president and owner of Drywood Plus, Inc., an Arizona corporation doing business as Berry Bros. Firewood Co.[1] ("Berry Bros."), and complained to Barry about Defendants' failure to pay them and other employees the overtime rate for their work exceeding 40 hours per week. (*Id.*) Fontes' employment was terminated that day. About four weeks later, when Ruiz met with Barry and again complained about Barry's failure to pay the correct overtime rate for his work and Barry's earlier decision to discharge Fontes, Barry fired Ruiz that same day. (*Id.* at 4)  The Complaint does not calculate the

---

[1] *See* http://azcc.gov/scripts/Drywood Plus, Inc. (last viewed 10/10/13). A district court may properly take judicial notice of any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201, Fed.R.Evid.; *see also United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008).

- 2 -

1 amount of each Plaintiff's overtime claim or the number of overtime hours each Plaintiff
2 purportedly worked.

3 Shortly after Defendants were either served with process or received notice of this
4 action, the parties believed they settled the case and submitted their proposed settlement to
5 the Court for approval. (Docs. 9, 10) The parties' first proposed settlement agreement
6 provided Defendants would pay Plaintiffs collectively the gross amount of $12,000.00,
7 divided evenly between each Plaintiff, for unpaid overtime wages, but the sum of $4,200.00
8 for Plaintiffs' attorney's fees would be paid out of the gross amount of $12,000.00, reducing
9 Plaintiffs' net recovery. (Doc. 10 at 1) The proposed settlement agreement also informed the
10 Court that, in May 2013, each Plaintiff was paid the amount "Defendants believed
11 represented all past wages allegedly due and owing to Plaintiffs." (*Id.*) Fontes and Ruiz were
12 paid the amounts of $2,146.67, and $2,342.33, respectively, and both checks were cashed.
13 (*Id.*)

14 On October 24, 2013, and after counsel were directed to do so, the parties' counsel
15 filed a Joint Supplemental Memorandum, providing more factual details of the parties' pre-
16 complaint settlement negotiations and the payments Plaintiffs received by checks, dated May
17 23, 2013. (Docs. 12-13) The Joint Supplemental Memorandum informed the Court that, on
18 April 27, 2013, Plaintiffs' counsel offered to settle this dispute without litigation in exchange
19 for payment of Plaintiffs' unpaid overtime allegedly due over the last two years "[i]n the
20 amount of $14,625 (32.5 hours per month x $18.75 per hour overtime rate) for Fontes and
21 $16,380 (32.5 hours per month x $21.00 per hour overtime rate) for Ruiz." (Doc. 13 at 2)
22 By letter, dated May 15, 2013, "Defendants acknowledged that they had erroneously failed
23 to pay Plaintiffs the half-time premium for overtime hours worked[,]" even though
24 Defendants claim Plaintiffs were paid at their regular hourly rate for the overtime worked.
25 (*Id.*) Defendants, however, dispute the number of overtime hours Plaintiffs claimed they
26 worked and the allegations of retaliatory discharge. (*Id.*) Nevertheless, Defendants calculated
27 the amount of Plaintiffs' half-time overtime pay over the nine quarters immediately
28 preceding their separation and paid Ruiz the sum of $2,612.75 (gross) and Fontes the amount

- 3 -

1 of $2,394.50 (gross) by check on May 23, 2013. (*Id*., Exh. A)

2 Believing they are entitled to more compensation for their overtime hours worked than 3 the amounts Defendants paid them on May 23, 2013, Plaintiff Ruiz filed a charge with the 4 National Labor Relations Board ("NLRB") and Plaintiffs jointly filed this lawsuit on 5 September 15, 2013. (Doc. 1) Defendants deny that Plaintiffs are due any overtime 6 compensation beyond what was paid in May 2013 and the retaliatory discharge allegations, 7 but claim that, "because Defendants determined that their defense costs would likely exceed 8 the settlement demand, and given the uncertainty of litigation and the enormous consumption 9 of time associated with the litigation process," Defendants made "a calculated business 10 decision" to offer the first proposed settlement terms. (Doc. 13 at 4)

11 Having serious concerns that the net recovery for each Plaintiff under the first 12 proposed settlement was not fair to each of them and should not be approved, the Court set 13 a fairness hearing for November 22, 2013, ordered Plaintiffs, their counsel, and defense 14 counsel to physically appear at the fairness hearing, and show cause why the Court should 15 not reject the first proposed settlement as unfair and inappropriate. (Doc. 14) The Court's 16 primary concern with the first proposed settlement was approving a settlement in which 17 Plaintiffs had to pay their own attorney's fees pursuant to a "contingency fee of $4,200 plus 18 a flat fee of $750 [for drafting a complaint] that further dilutes Plaintiffs' already reduced 19 FLSA recovery of 64% of their overtime wages, rather than an agreement that calls for a 20 direct payment by Defendants to Plaintiffs' counsel of Plaintiffs' attorney's fees." (*Id.* at 10)

21 At the fairness hearing, counsel understood the Court's concerns and agreed, in 22 private consultation with their clients, to modify the terms of their settlement, now 23 documented in the current Settlement Agreement. The Settlement Agreement indicates 24 Defendants have agreed to pay Plaintiffs collectively "the gross amount of $12,000.00 25 (exclusive of attorneys' fees), payable to each Plaintiff as follows: (i) the sum of $3,000.00, 26 less applicable tax withholdings, shall be made payable to each Plaintiff as settlement for 27 claimed unpaid wages, for which Defendants shall issue Plaintiffs an IRS Form W-2; (ii) the 28 sum of $3,000.00 shall be made payable to each Plaintiff for claimed liquidated,

1  compensatory and punitive damages, for which Defendants shall issue Plaintiffs an IRS Form
2  1099." (Doc. 17-1, ¶ A at 1) "In addition, Defendants shall issue a payment in the amount
3  of $2,500.00 to the Hernandez Law Firm, PLC for Plaintiffs' claimed attorney fees, for
4  which Defendants shall issue the law firm an IRS Form 1099." (*Id.*) Defendants represent the
5  Settlement Agreement's payments will be made "[w]ithin five (5) business days following
6  the District Court's entry of an order dismissing the Lawsuit and Defendants' receipt of
7  written confirmation that all pending government agency charges and complaints, including
8  the charge filed with the National Labor Relations Board ("NLRB") has been withdrawn[.]"
9  (*Id.*)

### A. Plaintiffs' Damages

The parties' Joint Supplemental Memorandum informs that Plaintiffs estimate they were paid for an average of 42 to 45 hours a week during the "Busy Season" between August and March each year at their regular hourly rate, although they claim to have worked between 45 and 60 hours per week during that same time period. (Doc. 13 at 4) Plaintiffs do not, however, provide any contemporaneous time records to support the overtime hours they claim they worked or any direct evidence that Defendants' willfully violated the FLSA to claim damages beyond the FLSA's two-year statute of limitations.

Plaintiffs' claim they "conservatively" estimate they are owed the overtime premium (half the regular hourly rate) for 3.5 hours each week during the Busy Season, and the full overtime rate (1.5 times the regular hourly rate) for 7.5 hours per week during the Busy Season. (*Id.*) Plaintiffs' calculations use the last regular hourly rate each Plaintiff was paid ($12.50 for Fontes; $14.00 for Ruiz), and 34.67 weeks to represent the number of weeks in each eight-month Busy Season. Fontes claims he should have been paid $758.41 ($6.25 overtime premium x 3.5 hours x 34.67 weeks) for the unpaid overtime premiums, and $4,875.47 ($18.75 overtime rate x 7.5 x 34.67 weeks) in unpaid overtime wages for each Busy Season covered under the applicable statutory period, totaling $12,623.90 for the past two years. (*Id.*) Ruiz claims he is owed $849.42 ($7.00 overtime premium x 3.5 hours x 34.67 weeks) for the unpaid overtime premiums, and $5,462.53 ($21.00 overtime rate x 7.5

1  x 34.67 weeks), totaling $11,267.76 for the past two years. (*Id.*) Plaintiffs total sum allegedly
2  owed is $23,891.66 ($12,623.90 plus $11,267.76 = $23,891.66), less the amounts Defendants
3  paid in May 2013 of $5,007.25 ($2,612.75 (gross) for Ruiz and $2,394.50 (gross) for Fontes
4  = $5,007.25) or $18,884.41 in new money. Twelve thousand ($12,000.00) is the new money
5  per the Settlement Agreement to be paid to Plaintiffs collectively or 64 per cent or so of the
6  amount Plaintiffs claim Defendants owe them for two years of overtime work, not counting
7  Plaintiffs' attorney's fees and the litigation costs incurred to date.

### B. Attorney's Fees and Costs

According to their attorney, Plaintiffs and their attorney entered into a "pure contingency arrangement" in March 2013, providing that Plaintiffs' counsel would receive 25 per cent of the total recovery of any settlement or judgment. (Doc. 13 at 6) Despite a contingency fee agreement with his clients, Plaintiffs' counsel charged each Plaintiff $375 ($750 total) as a flat fee in "a separate side agreement" "to hold in trust in the event [Plaintiffs] mutually agreed to file a Complaint to pursue their claims for unpaid wages and overtime[,]" which was eventually drafted and filed. (*Id.*) As a part of the second Settlement Agreement, Plaintiffs' counsel agreed in open court to convert the flat fee $750 to litigation costs advanced by him on Plaintiffs' behalf, which closely approximates Plaintiffs' actual costs of litigation to date. (*See* sealed doc. 15, ¶ 18 at 5)

### II. The Fair Labor Standards Act

The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 739 (1981). In view of the inequalities in bargaining power between employees and employers, Congress made the provisions of the FLSA mandatory. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).

The FLSA regulates minimum wage, overtime pay, equal pay, and child labor, and prohibits employers from retaliating against employees who exercise their rights under the Act. *See Dellinger v. Science Applications Intern. Corp.*, 649 F.3d 226, 227-229 (4th Cir. 2011). The FLSA provides that no employer "shall employ any of his employees who in a

1  workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce
2  . . . for a workweek longer than forty hours unless such employee receives compensation"
3  for hours worked beyond the forty hour floor "at a rate not less than one and one half times"
4  the rate at which he or she is regularly employed. 29 U.S.C. § 207(a)(1). The Act further
5  provides that any employer who violates the overtime wage provision "is liable not only for
6  the unpaid overtime compensation but also '[a]n additional equal amount as liquidated
7  damages.'" *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 919-20 (9th Cir. 2003)
8  (quoting 29 U.S.C. § 216(b), *ruled unconstitutional on other grounds by Alden v. Maine*, 527
9  U.S. 706, 712 (1999)); *see also Bollinger v. Residential Capital, LLC*, 863 F.Supp.2d 1041,
10 1054 (W.D. Wash. 2012). Liquidated or double damages, represent compensation, and are
11 not considered a penalty. "Double damages are the norm, single damages the exception." *Id.*
12 at 920 (citation and internal quotation marks omitted); *Nellis v. G.R. Herberger Rev. Trust*,
13 360 F.Supp.2d 1033, 1044 (D. Ariz. 2005). District courts have the discretion to deny an
14 award of liquidated damages "if the employer shows that it acted in subjective 'good faith'
15 and had objectively 'reasonable grounds' for believing that its conduct did not violate the
16 FLSA." *Id.* (quoting portions of 29 U.S.C. § 260).

17       The Act requires that in any action to enforce § 207, the Court "*shall, in addition to
18 any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be
19 paid by the defendant, and costs of the action.*" 29 U.S.C. § 216(b) (emphasis added).

20       "The FLSA provides for a two-year statute of limitations unless there is a finding of
21 willfulness, in which case a three-year statute of limitations applies." 29 U.S.C. § 255(a).
22 "This two-tiered statute of limitations[ ] makes it obvious that Congress intended to draw a
23 significant distinction between ordinary violations and willful violations." *Id.* (quoting
24 *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988) (internal quotation marks
25 omitted). The party claiming an exception to the normal period bears the burden of showing
26 the violation was willful. *Nelson v. Waste Management of Alameda County, Inc.*, 33
27 Fed.Appx. 273, 274 (9th Cir. 2002) (citing 29 U.S.C. § 255(a)). The determination of
28 willfulness is a mixed question of law and fact. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th

1. Cir. 2003) (citation omitted). Mere negligence by the employer in determining its legal
2. obligation is not sufficient. *Nelson*, 33 Fed.Appx. at 274. Rather, a violation is willful if the
3. employer either: (1) affirmatively knew its conduct violated the FLSA; or (2) recklessly
4. disregarded whether its conduct violated the FLSA. *Chao*, 346 F.3d at 918 (citing
5. *McLaughlin*, 486 U.S. at 133). "For § 255's extension to obtain, an employer need not
6. knowingly have violated the FLSA; rather the three-year term can apply where an employer
7. disregarded the very 'possibility' that it was violating the statute, *Herman v. RSR Sec. Servs*.,
8. Ltd., 172 F.3d 132, 141 (2nd Cir. 1999), although [a court] will not presume that conduct was
9. willful in the absence of evidence." *Alvarez*, 339 F.3d at 908 (finding evidence sufficient to
10. support a finding that employer recklessly disregarded the possibility that it was violating the
11. FLSA because employer was on notice of FLSA's requirements, but took no action to assure
12. compliance with them.)

13. Any assertion of an exemption from the FLSA is considered an affirmative defense
14. that must be pled and proved by the defendant. *See Magana v. CNMI*, 107 F.3d 1436, 1445-
15. 46 (9th Cir. 1997) (exemption from requirement to pay overtime under the FLSA is an
16. affirmative defense that must be raised by the employer); Fed.R.Civ.P. 8(b); *Corning Glass
17. Works v. Brennan*, 417 U.S. 188, 196-97 (1974) ("an exemption under the [FLSA] is a matter
18. of affirmative defense on which the employer has the burden of proof.").

19. Generally, district courts do not rule on a private settlement agreement negotiated
20. between the parties in a civil action for damages. If, however, a plaintiff brings an FLSA
21. action, the parties must seek approval of the settlement agreement to ensure that it is
22. enforceable and fair. *Nall v. Mal-Motels, Inc*., 723 F.3d 1304, (11th Cir. 2013) ("Still, we
23. believe that the rule of *Lynn's Food* applies to settlements between former employees and
24. employers.") (affirming holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350
25. (11th Cir. 1982)). A district court may approve a settlement agreement if it reflects a
26. "reasonable compromise over the issues." *Lopez v. Arizona Public Service Co.*, 2010 WL
27. 1403873, at *1 (D. Ariz. Jan. 27, 2010) (quoting *Lynn's Food*, 679 F.2d at 1352-53). "If the
28. settlement reflects a reasonable compromise over issues such as FLSA coverage or


1. Cir. 2003) (citation omitted). Mere negligence by the employer in determining its legal
2. obligation is not sufficient. *Nelson*, 33 Fed.Appx. at 274. Rather, a violation is willful if the
3. employer either: (1) affirmatively knew its conduct violated the FLSA; or (2) recklessly
4. disregarded whether its conduct violated the FLSA. *Chao*, 346 F.3d at 918 (citing
5. *McLaughlin*, 486 U.S. at 133). "For § 255's extension to obtain, an employer need not
6. knowingly have violated the FLSA; rather the three-year term can apply where an employer
7. disregarded the very 'possibility' that it was violating the statute, *Herman v. RSR Sec. Servs*.,
8. Ltd., 172 F.3d 132, 141 (2nd Cir. 1999), although [a court] will not presume that conduct was
9. willful in the absence of evidence." *Alvarez*, 339 F.3d at 908 (finding evidence sufficient to
10. support a finding that employer recklessly disregarded the possibility that it was violating the
11. FLSA because employer was on notice of FLSA's requirements, but took no action to assure
12. compliance with them.)

13. Any assertion of an exemption from the FLSA is considered an affirmative defense
14. that must be pled and proved by the defendant. *See Magana v. CNMI*, 107 F.3d 1436, 1445-
15. 46 (9th Cir. 1997) (exemption from requirement to pay overtime under the FLSA is an
16. affirmative defense that must be raised by the employer); Fed.R.Civ.P. 8(b); *Corning Glass
17. Works v. Brennan*, 417 U.S. 188, 196-97 (1974) ("an exemption under the [FLSA] is a matter
18. of affirmative defense on which the employer has the burden of proof.").

19. Generally, district courts do not rule on a private settlement agreement negotiated
20. between the parties in a civil action for damages. If, however, a plaintiff brings an FLSA
21. action, the parties must seek approval of the settlement agreement to ensure that it is
22. enforceable and fair. *Nall v. Mal-Motels, Inc*., 723 F.3d 1304, (11th Cir. 2013) ("Still, we
23. believe that the rule of *Lynn's Food* applies to settlements between former employees and
24. employers.") (affirming holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350
25. (11th Cir. 1982)). A district court may approve a settlement agreement if it reflects a
26. "reasonable compromise over the issues." *Lopez v. Arizona Public Service Co.*, 2010 WL
27. 1403873, at *1 (D. Ariz. Jan. 27, 2010) (quoting *Lynn's Food*, 679 F.2d at 1352-53). "If the
28. settlement reflects a reasonable compromise over issues such as FLSA coverage or

1 computation of back wages . . . , the court may approve the settlement in order to promote
2 the policy of encouraging settlement of litigation." *Khanna v. Inter-Con Sec. Systems, Inc.*,
3 2012 WL 4465558, at *10 (E.D. Cal. Sept. 25, 2012) (citations and internal quotation marks
4 omitted).

5 Conversely, district courts also disapprove proposed FLSA settlement agreements for
6 varying reasons. *See*, *e.g.*, *McKeen-Chaplin v. Franklin American Mortg. Co.*, 2012 WL
7 6629608 (N.D. Cal. Dec. 19, 2012) (rejecting the parties' joint motion to approve FLSA
8 settlement and dismissal motion without prejudice due to the absence of enough information
9 and analysis to conclude that the settlement was a fair and reasonable resolution of the action,
10 the use of an overly broad general release, and the absence of time records justifying the
11 attorney's fees requested); *Khanna*, 2012 WL 4465558, at *12 (denying without prejudice
12 preliminary approval of FLSA settlement because counsel did not provide "any estimate of
13 the potential recovery should the case be resolved on summary judgment or at trial, so the
14 court does not have sufficient information to determine even preliminarily whether the
15 settlement is within the range of possible approval.").

16 "There are, however, no agreed upon factors to consider in evaluating a proposed
17 FLSA settlement." *Almodova v. City and County of Honolulu*, 2010 WL 1372298, at *4 (D.
18 Haw. March 31, 2010). "Some courts have applied the factors for approval of class action
19 settlements by analogy." *Id.* "In evaluating a proposed class action settlement for overall
20 fairness, courts balance the following factors:

21 the strength of the plaintiffs' case; the risk, expense, complexity, and likely
duration of further litigation; [omitted as irrelevant to a FLSA action]; the amount
22 offered in settlement; the extent of discovery completed and the stage of the
proceedings; the experience and views of counsel; the presence of a governmental
23 participant; [omitted as irrelevant to a FLSA action].

24 *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations
25 omitted)).

26 In reviewing a private FLSA settlement, the district court's "[o]bligation is not to act
27 as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate
28 given the FLSA's purposes and that such settlements do not undermine the Act's purposes."

- 9 -

*Goudie v. Cable Communications, Inc.*, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009). "Thus, [i]n reviewing the fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Id.* (quoting *Yue Zhou v. Wang's Rest.*, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007)). As part of the inquiry to determine whether a FLSA settlement is fair, a district "[c]ourt must consider the proposed service payments to the named plaintiff and the attorney's fees." *Khanna*, 2012 WL 4465558, at *10 (citing *Grove v. ZW Tech, Inc.*, 2012 WL 1789100, at *7 (D. Kan. May 7, 2012)). "Among the factors relevant to this determination are the course of the negotiations, the existence of any factual or legal questions that place the outcome of the litigation in doubt, the benefits of immediate recovery balanced against litigation, and the parties' belief the settlement is fair." *Id.* at 11 (citing *Grove*, 2012 WL 1789100, at *5).

In *Almodova*, the district court discussed the issue of attorney's fees and costs and cited the discussion in *Silva v. Miller*, 307 Fed.Appx. 349 (11th Cir. 2009):

> FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee.

2010 WL 1372298, at *6

In *Lynn's*, the Eleventh Circuit held that:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, *the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.*

*Lynn's*, 679 F.2d at 1352-53 (emphasis added). While the Ninth Circuit has not specifically addressed the question of whether FLSA claims may only be settled and resolved in two ways, numerous district courts throughout the Ninth Circuit have followed *Lynn's Food Stores*. *See McKeen-Chaplin v. Franklin American Mortg. Co.*, 2012 WL 6629608, at *2 n. 4 (N.D. Cal. Dec. 19, 2012) (citations omitted).

Because approval of proposed FLSA settlements are dispositive and such settlements require judicial approval, FLSA settlement documents, usually containing confidential, personal information of the parties, are not typically sealed unless the parties meet the Ninth Circuit's "compelling reasons" standard. *See In re Sepracor Inc. Fair Labor Standards Act (FLSA) Litigation*, 2009 WL 3253947, at *1-2 (D. Ariz. Oct. 8, 2009) (rejecting the parties' request that the entire proposed settlement agreement should remain sealed) (citing, *inter alia*, *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).

**III. Discussion**

Against the FLSA's legal framework, the Court has reviewed the second Settlement Agreement as supplemented by the factual information contained in the parties' prior filings and provided at the fairness hearing. The Court finds the settlement is a fair and reasonable compromise of *bona fide* disputes related to overtime wages allegedly owed under the FLSA and the alleged unlawful firings for engaging in protected activity. Each Plaintiff will receive a $6,000 gross recovery in addition to the gross recoveries already received of $2,612.75 for Ruiz and $2,394.50 Fontes on or about May 15, 2013.[2]

Significantly, despite a 25% contingency fee contract with their attorney, Defendants, not Plaintiffs, will pay Plaintiffs' attorney's fees, without reducing each Plaintiff's $6,000 gross recovery, in the amount of $2,500 directly to Plaintiffs' counsel, which more closely meets the FLSA's provision on the payment of a wronged employee's attorney's fees. *See*

---

[2] On or about May 15, 2013, "Plaintiffs paid their counsel 25% of the net amount (not gross) each of them received (Plaintiff's counsel received $536.67 from Plaintiff Fontes and $585.58 from Plaintiff Ruiz)[,]" totaling $1,122.25 in fees paid to date. (Doc. 13 at 6)

- 11 -

1   29 U.S.C. § 216(b) (a district court "*shall, in addition to* any judgment awarded to the
2   plaintiff or plaintiffs, allow a reasonable attorney's fee to *be paid by the defendant*, and costs
3   of the action.") (emphasis added). If the Settlement Agreement is approved, Plaintiffs'
4   counsel will receive reasonable service compensation, totaling $3,622.25 ($2,500 +
5   $1,122.25), which is approximately $181.00 per hour for the estimated 20 billable hours
6   Plaintiffs' attorney has spent on this case.[3] Thus, Plaintiffs' counsel is compensated
7   adequately and reasonably, no conflict of interest exists to taint the settlement amount the
8   wronged employees do recover, and Plaintiffs' contingency fee contract with their attorney
9   does not derogate or otherwise dilute the FLSA's provisions. *See Lynn's Food*, 679 F.2d at
10  1352 ("FLSA rights cannot be abridged by contract or otherwise waived.")

11  A settlement at this time benefits each Plaintiff with an immediate recovery, rather
12  than enduring the risks, uncertainty, and delays of continued litigation, shortly before the
13  year-end holidays and each Plaintiff has acknowledged on the record his belief that the
14  proposed settlement is fair. *See Khanna*, 2012 WL 4465558, at *11 ("Among the factors
15  relevant to [a fair settlement] determination are . . . , the benefits of immediate recovery
16  balanced against litigation, and the parties' belief the settlement is fair.") (citation omitted).
17  The parties have negotiated in good faith since before the litigation was filed and approval
18  of the Settlement Agreement "promote[s] the policy of encouraging settlement of litigation."
19  *Lynn's Food*, 679 F.2d at 1354 (footnote omitted).

20  Based on the foregoing,

21  **IT IS ORDERED** that the parties' Joint Motion to Approve Settlement and Dismiss
22  All Claims with Prejudice and attached Settlement Agreement and General Release, filed on
23  November 25, 2013, docs. 17, 17-1, is **GRANTED**. All claims in this action are dismissed
24  with prejudice with the parties to pay the attorney's fees as set forth in the parties' Settlement
25  Agreement and each party shall bear his or its litigation costs.

---

[3] Plaintiffs' counsel estimated he had spent 18.01 hours working on this case prior to the November 22, 2013 fairness hearing and most recent document preparation. (Sealed doc. 15, ¶¶ 5-17 at 3-4)

**IT IS FURTHER ORDERED** that parties' Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice, filed on October 2, 2013, doc. 9, is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the District Court of Arizona hereby retains jurisdiction over the parties and this action to enforce the Settlement Agreement.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter the Stipulated Judgment consistent with document 17-2.

Dated this 2nd day of December, 2013.

*/s/ Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge